**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

RICHARD EBERLY and
PATRICIA EBERLY,

       Plaintiffs,

                                         Civil No. 04-0977 WJ/RLP

CARL MANNING, LEE Zillhart,
MARTHA Zillhart, MAGELLA MANNING,
CHRISTINA A. WIELAND, ZUNI MOUNTAIN, LTD,
a New Mexico Limited Partnership, and
LORENZO SANCHEZ,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment filed by

Defendants Carl Manning, Martha Zillhart and Lee Zillhart on January 9, 2006 (**Doc. 47**).  In this

action, which Plaintiffs filed in federal court based on diversity jurisdiction, neighbors are suing

each other over property disputes.  Plaintiffs are residents of Arizona, and Defendants are

residents of New Mexico and Kansas.  Plaintiffs filed this action in federal court based on

diversity jurisdiction.  Having considered the parties' briefs and the applicable law, I find that

Defendants' motion is well-taken and shall be granted.

### General and Procedural Background

Plaintiffs and Defendants own neighboring properties.  The land at the center of this

dispute was originally a family ranch owned by Defendant Christina Wieland.  Defendants Carl

Manning and Martha Zillhart are siblings, and are children of Christina Wieland.  Plaintiffs

contend that Defendants are trying to drive them off their land, and Defendants contend that Plaintiffs are trying to cut off access to their homes by blocking a driveway easement which runs through Plaintiffs' property and provides access to Defendants' property.

Plaintiffs have filed suit against Defendants for carrying out acts which have affected the integrity and value of their property, such as: blading a road through the property; destroying fruit trees; tearing up grass and vegetation by driving four-wheelers on areas that are clearly off the disputed driveway easement; moving soil and filling a stock tank.[1]  Plaintiffs attribute Defendants' conduct to a resentment that their mother sold their family's land to Plaintiffs and other individuals, and contend that Defendants' actions are attempts to force the landowners to give up their land.  Defendants deny trespassing on Plaintiffs' property and assure that their presence on Plaintiffs' land is limited to the use of an easement which had been reserved by their mother and indicated on the Subdivision Plat Map.  What comes through the pleadings, loud and clear, is the emotional undercurrent of hostility that exists between the neighbors.  The hostility has reached a point at which Plaintiffs and Defendants have hurled allegations of harassment and threats of physical violence against each other.

The Complaint alleges Trespass (Count One), Conversion (Count Two) and Prima Facie Tort (Count Three).  This summary judgment motion was filed by Defendants Carl Manning, ("Manning") and Lee and Martha Zillhart ("Zillharts").  For purposes of this motion, the Court will use "Defendants" to refer to Carl Manning and the Zillharts unless otherwise specified.

The other Defendants in this case who are not involved in bringing the summary judgment

---

[1]  Richard Eberly described a "stock tank" as a "flood control dike to keep the silt from the wash from silting up the creek." R. Eberly Dep. at 65.

motion, Zuni Mountain, Ltd. and Lorenzo Sanchez ("Sanchez"), are being sued for monetary damages arising from fraud and misrepresentation connected to the sale of the land to Plaintiffs (Count IV in the Complaint).  Christina Wieland ("Wieland") was dismissed from the action on a motion to dismiss based on insufficiency of process.  Doc. 38.  Magella Manning was never served in this action, and is not a party to this motion.

The Court also denied a motion to dismiss filed by Carl Manning and the Zillharts which argued a lack of an amount in controversy for federal jurisdiction based on diversity.  Plaintiffs based the value of their claims on loss to property value, which in the end was limited to the alleged destruction of several fruit trees, the stock tank (or flood dike) and trespass.  See Doc. 18. The Court agreed with Defendants that the total value of Plaintiffs' property, even assuming a total loss, was considerably less then $75,000.  Plaintiffs' "improvements" to the land included a cabin valued at $16,000, a permanently installed camper valued at $1,000, the housepad built for Plaintiffs' retirement home and the stock tank which Defendants later filled in.  Doc. 18 at 7.

However, Plaintiffs also request damages for emotional distress, based largely on Plaintiffs' contention that an easement or road through their lots ruins the entire value of their property.  R. Eberly Dep. at 163:7-10.  The Eberlys had planned to build their retirement home on one of their lots, but this plan is now put on hold because of the easement dispute.  See R. Eberly Dep. at 95:4-7; at 98-100; at 102.  Plaintiffs also claim emotional distress from the fact that Lee Zillhart moved the stock tank or dike, and because Defendants bladed the road on what Plaintiffs allege is their property.  R. Eberly Dep. at 978-13.  The Court ultimately found that federal jurisdiction existed.

In their initial response to Defendants' summary judgment, Plaintiffs requested that the

Court dismiss their claims against Carl Manning and the Zillharts without prejudice.  I denied this request, and allowed Plaintiffs the option of either dismissal with prejudice or an opportunity to properly respond to the summary judgment motion.  Doc. 52.  Plaintiff has filed a supplemental response while at the same time continuing to seek dismissal without prejudice. The Court will construe the pleading as a response on the merits, and will proceed to address it as such.

Carl Manning and the Zillharts seek summary judgment for the following reasons: they did not trespass on Plaintiffs' property but rather stayed within the easement reserved by their mother; and because Plaintiffs cannot show they have sustained any damages, including damages for emotional distress, from Defendants' alleged conduct.

**Legal Standard**

Summary judgment is appropriate when the pleadings, deposition transcripts, affidavits and evidentiary material show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Gillogly v. GE Capital Assurance, 430 F.3d 1284 (10th Cir. 2005) (citations omitted).  An important function of summary judgment is to eliminate factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A nonmovant may not rest upon his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiffs disagree with many of Defendants' statement of undisputed facts, but generally counter Defendants' factual assertions with unsupported argument or testimony that registers the disagreement but does not create genuine factual issues that require resolution by a fact finder. See Salehpoor v. Shahinpoor, 358 F.3d 782, 789 (10th Cir.2004), cert. denied, 543 U.S. 812 (2004) (unsupported conclusory allegations do not create an issue of fact).

Plaintiffs also set up factual confusion because they present statements which are contradictory or inconsistent with their stated position.  A disputed fact must be "material" in order for a non-movant to survive summary judgment, meaning it might affect the outcome of the suit under the governing law.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Allen v. Muskogee</u>, 119 F.3d 837, 839 (10th Cir. 1997).  Setting up confusion with contradictory facts does not overcome summary judgment. Where Plaintiffs' contradictory statements cannot be reconciled with the facts Plaintiffs represent as undisputed, the Court will rely on the undisputed facts in making findings as each purported "dispute" of fact is addressed.  <u>See</u>, <u>Sage v. Broadcasting Publications, Inc</u>., 997 F.Supp. 49, *53 (D.C. 1998).  The Court will address the most salient "disputes" of fact presented by Plaintiffs in the course of the factual narrative and discussion where relevant.

**Factual Background (based on parties' statements of facts) ("SMF")**[2]

In 1979, Wieland sold 2400 acres or property to Lorenzo and Gloria Sanchez, reserving an easement over an original existing road which ran through the property, pursuant to a Real Estate contract.  Doc. 33, Ex. A, and ¶¶ 6, 11; <u>see also</u> Sanchez Aff. (attached to Mem. Brf.)

In July 1985, a Subdivision Plat ("Plat") was created and approved by the McKinley County Commissioners for part of this property, which eventually became known as the Box S Subdivision ("Subdivision"). The Plat shows the location of the original road which ran through the Subdivision.  Ex. D (Plat map, attached to Wieland Aff., Doc. 33).  The road starts at the

---

[2]  Defendants' statement of facts do not exactly correspond to Plaintiffs' numbering of responses; the responses are two numbers lower, starting from No. 7.  For example, Plaintiffs' response numbered as No. 10 is actually a response to Defendants' Fact No. 12.  For easier reading, Plaintiffs' responses to Defendants' Statement of Undisputed Facts will be referred to as "Resp. to SMF."

lower portion of the Subdivsion through Blocks 3 and 4 and continues north to Block 1.  In Block 1, this original existing road follows the path through lot 8 all the way through lots 19 and 20, and "Ys" near lots 15 and 16.

The existing road reserved as an easement by Wieland is shown marked on the Subdivision Plat within double dotted lines as a 40-foot Driveway Easement ("Easement").  Richard Eberly claimed that when he purchased the property, the road was actually two dirt tracks with high grass grown in the center, but does not dispute the fact that the Plat indicates the Easement is 40-feet wide.  The Eberlys own Lots 10, 11 and 12 in Block 1.  They paid $10,000 for Lot 11 in 1993; $18,000 for Lot 12 in 2001, and $15,000 for Lot 10 in 2002.

Carl Manning, a resident of New Mexico, owns Lot 19 in Block 1, which is north of Lots 10, 11 and 12.  Defendants Martha and Lee Zillhart, residents of Kansas, own Lot 20 in Block 1 in the Subdivision.  The disputed Easement provides access to these north lots, and runs through Plaintiffs' lots.  There were plans to build a new dedicated road, which is also shown in the Plat and which would then provide access for the affected subdivision lots.  Sanchez Aff., ¶ 5; Pltffs' Ex. 2.  This road has been partially completed but ends at Lot 19, so the new road does not resolve the access problem to Lots 19 and 20.  See R. Eberly Dep. at 175-76.

A.    Facts Concerning the Road

In this case, the uncovering of the undisputed facts is somewhat messy.  This is because Plaintiffs' contentions take the form of a moving target when responding to Defendants' factual assertions, depending on the fact Plaintiffs are attempting to dispute.  For example, at times Plaintiffs concede there is a valid Easement as depicted on the Plat, but argue that Defendants' actions blading the road and destroying their property were outside the boundaries of the

Easement.  See, e.g., Resp. to SMF 22.  Conversely, when they cannot avoid a finding that the original road and the road that was bladed is one and the same, then Plaintiffs assert that the boundaries of the Easement as depicted on the Plat are inaccurately depicted.  See, e.g., Resp. to SMF 31.  In other words, Plaintiffs argue at different times, that the Easement does not exist; no longer valid if it does exist; or not accurately depicted if does exist and is valid.

To start with, it is undisputed that the road Richard Eberly traversed in 1993 when he first viewed the property was the only road that existed (for purposes of this motion, "Eberly" will be used to refer to Richard Eberly, and "Patricia Eberly" or "Patricia" to refer to his wife).  It is also undisputed that Christina Wieland reserved an easement over the existing road on the property.

At times Plaintiffs claim that the original dirt road is not the same as the road that exists today (Resp. to SMF 18, 28, 30), and also dispute that this original road is the road which Defendants bladed and where they cleared through the flood control dike. (Resp. to SMF 18).  However, Eberly's own testimony as well as Plaintiffs' admissions belie the existence of a dispute on these issues:

> Q.    Did they blade and put the bridge in at the place where the  – where you first walked?
> A.    Yes.
> Q.    So it was on that road that you walked in '93?
> A.    Yes.

Eberly Dep. at 28:1-6.

and

> Q.    . . . And the portion, the place where they cut through the dike was on the original road that you walked to originally [sic] to get to your property, correct?
> A.    Yes.

Eberly Dep. at 66:14-17.  Plaintiffs also respond to Defendants SMF 28 by stating: "The old

7

existing road was a dirt track.  Defendants Manning and Zillharts *bladed the old existing road*, expanding its width and putting in a bridge which was never there before. . . .") (emphasis added).[3]

Plaintiffs also suggest that the 40-foot Driveway Easement is pictured inaccurately on the Plat.  See Eberly Dep. at 17:11-24; 47:1-13 and 75:16-23.  Yet this testimony conflicts with Plaintiffs' admission that "the existing road reserved as an easement by Christina Wieland is portrayed on the Subdivision Plat map as the 40' Driveway Easement."  See, Resp. to Defts' SMF No. 7.  The testimony also conflicts with other comments Plaintiffs have made concerning the location of the easement.  See, Resp. to SMF 22 (stating that the Driveway Easement "*as it appears on the plat map*" may be a valid easement, but that Defendants bladed a road in a different area ."  The Court has already addressed and rejected this contention as inconsistent with Eberly's own testimony).  Plaintiffs' vacillation on this position can be disregarded, because in this situation, the surveyor's accuracy in portraying the Easement on the Plat is not determinative as to Defendants' liability.  Defendants' liability is tied to whether their actions occurred on that part of the Subdivision that was reserved as an Easement, and whether this Easement is still valid.

In disputing Defendants' SMF 21, Plaintiffs insist that what was a ten foot grass-grown dirt track cannot be a 40-foot Easement.  The dispute is immaterial, because the physical condition and width of the road after Defendants bladed it does not change the nature of the Easement -- so long as the Easement is valid and Defendants' actions occurred within its

---

[3]  In the same response, Plaintiffs add that "the old dirt track is not in the location that the 'Driveway Easement' appears on the plat map."  Resp. to Defts' SMF 30.  This refers to Plaintiffs' contention that the Plat depiction of the Easement is inaccurate, which is addressed further below.

boundaries.  Eberly himself has acknowledged that the road Defendants bladed was 30 feet wide.

Dep. at 177:23-25.

Plaintiffs have created sham disputes in arguing that the road on which Defendants'

alleged trespass and conversion took place is different from either the original dirt road or the

road reserved as an Easement, because the undisputed facts add up otherwise:  Plaintiffs admit

that an easement was reserved by Wieland on the existing road, and that this road is portrayed on

the Subdivision Plat map as a 40-foot Driveway Easement.  It is clear that the Easement as drawn

on the Plat is intended to represent the road which pre-existed the Subdivision, since it was the

only road that existed when Eberly walked the area in 1993.  Richard Eberly stated that

Defendants bladed and cleared the dike on that existing road.  Thus, the only road at issue in this

case is the road which is depicted as a 40-foot Driveway Easement on the Subdivision Plat.  See

also,  P. Eberly Dep. at 39:22-25 (discussing original road as a legal easement).   In addition,

while Plaintiffs dispute the fact that the Easement is the only Subdivision access to Lots 18, 19

and 20 (Dep. at 177:1-6), they offer no facts to support this purported dispute.

B.    Facts Regarding the McKinley County Hearing

In July 2003, Paul Petranto ("Petranto") applied to the Board of McKinley County

Commissioners for a vacation of the 40-foot Driveway Easement through Lots 17 and 18 in the

Subdivision, which he owned.[4]  The Zillharts and Carl Manning attended the hearing, and Richard

Eberly gave testimony at that hearing.  Eberly was not a party to this action, but supported

Petranto's request to vacate the Easement.  The Board refused to vacate the Easement.  It

---

[4]  Petranto is not a named party in this action, but the factual history shows that he is
closely aligned with Plaintiffs.   He has filed a companion case in state court in the Eleventh
Judicial District for McKinley County, D-1113-CV-200200018.

determined that the 40-foot Driveway Easement running through Lots 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20 had been previously approved by McKinley County Commissioners in 1985.  The Board also ruled that the Easement is the only subdivision access to Lots 18, 19 and 20 and that vacating the Easement would violate Subdivision regulations.  Plaintiffs have never attempted to vacate the Easement with the County.

Several of the facts describe the incident related to Defendants' clearing, or filling in, the dike, which occurred after McKinley County denied Petranto's request to vacate the Easement. In August 2004, while driving to his lot, Carl Manning approached a very large pile of dirt that had been placed "on the north side of a bridge on the 40' driveway easement running to lot 10" which is owned by Eberly.  SMF 35.   Manning saw evidence of a track marks from heavy equipment both in the Easement as well as what appeared to be a possible home pad site on the Eberlys' property.  Manning contacted the police department, as he was unable to access his property.  On arrival, Manning gave the officer a copy of the ruling by the McKinley County Commissioners regarding the 40-foot Easement and showed the officer the large mound of dirt and rock that had been placed in the Easement.   The officer advised Manning to keep all receipts and expenses incurred while clearing the way, since heavy equipment would be needed to clear the road.[5]

### Discussion

Just as Plaintiffs shift their positions when responding to Defendants' factual assertions, they seem to shift their legal position on which they base this litigation.  For example, in their

---

[5]  Plaintiffs' objections to the officer's statements as hearsay are without merit. Defendants are describing their understanding about what they were told, rather than relaying the officer's exact statements.

depositions, the Eberlys took the position that no easements existed on his property (see, R. Eberly Dep. at 49:19-20; at 144:5-7; P. Eberly Dep. 10:5-7).  Richard Eberly also stated that he would not be disputing the existence of the 40-foot Easement in this federal lawsuit.  R. Eberly Dep. at 87:14-16.  The latter position is inconsistent not only with his own testimony, but is at odds with Plaintiffs' claims of trespass and destruction of property which are asserted against the Mannings and Zillharts, and which are mentioned in the Initial Pretrial Report. Doc. 41.

**I.      Plaintiffs' Claims Against the Mannings and Zillharts**

The Court considers the best indication of Plaintiffs' claims to be what is set forth as Plaintiffs' contentions in the Initial Pretrial Report ("IPTR").  In the IPTR, Plaintiffs contend that they were told by Lorenzo Sanchez when they bought the land from Sanchez and Zuni Mountain, Ltd ("Zuni Mountain") that no one would use the old dirt road (the disputed Easement) that went through Plaintiffs' lots – Lots 11 and 12.[6] IPTR at 3.

Representations made by Sanchez and Zuni Mountain are not relevant to this motion because they are not relevant to Plaintiffs' claims against the Mannings or Zillharts.  However, Eberly's testimony at his deposition is contradictory to his asserted position in the IPTR.  More times than not, Eberly states that Lorenzo told him the existing road would not be used once the new road was constructed – which is different from being told the existing road could not be used at all:

> R. Eberly Dep. at 17:4-6 (". . . [Lorenzo's] answer to me was, after the deeded road was put in, this road was to be closed and it was not to be used").

_____

[6] There is no explanation of how Lorenzo Sanchez and Zuni Mountain, Ltd. relate to each other, or exactly what role Zuni Mountain, Ltd. had in the lot negotiations or purchases.  It is described as "a New Mexico Limited Partnership" in the Answer filed by Sanchez and Zuni Mountain, Ltd.  Doc. 25.  Both are represented by the same attorney.

. . . at 44:22-23 ("He told me the road *would be* closed and not used after the deeded road was complete on more than one occasion") (emphasis added).

. . .a t 50:4-9 ( ". . . his answer to me [was that the] road was to be closed as long as nobody used it, it was not a concern.  I was trusting his word that it was to be closed road and never to be used again. . . .").

. . . at 72:8-9 ("I was told by Lorenzo and Brian Sanchez that [the old road] was not to be used").[7]

. . . at 153:19-22 ("It was my understanding that as the deeded road was complete, that road was not going to be used.  Therefore, it would go away. . . .").

. . . at 154:17-18 ("My initial conversation with Lorenzo and Brian, they said that road would not be used.  And at that time, I could block the road, and I would be within my legal rights to do so").

. . . at 163:7-10 ( "I purchased this property under the word-of-mouth from Lorenzo and Brian that [the old road] was never going to be used").

Patricia Eberly's understanding of what her husband told her about the use of the old road is also consistent with a view that access along the old road would continue until the new road was completed.  See P. Eberly Dep. at 13:23-24 (stating that Sanchez promised her husband that "that road would be closed as soon as the dedicated road was finished").

The IPTR also indicates what Plaintiffs' position is as it relates to claims asserted against the Mannings and Zillharts.  This position is relevant to this summary judgment motion, and it is this position on which the Court will rely in ruling on the motion for summary judgment:

> Further, while Plaintiffs do not dispute that Wieland reserved an Easement in the original real estate contract, they contend that the Easement did not survive because the property reverted to Wieland before the subdividers installs the required subdivision infrastructure, including roads.

IPTR at 3. Thus, representations made to Plaintiffs by Sanchez and Zuni Mountain might be

---

[7]  The pleadings do not explain who Brian Sanchez is.

relevant to Plaintiffs' claims against these Defendants, but the only issue that is relevant to Plaintiffs' claims of trespass, conversion and prima facie tort against the Mannings and Zillharts is the validity of the Easement.

## II.     Whether the Easement Exists

Based on the undisputed facts, Wieland reserved an easement which is indicated on the Plat map as the 40-foot Driveway Easement.  This is the road which Defendants bladed and cleared through the dirt flood dike.  Plaintiffs' claims of trespass, conversion and prima facie tort against the Mannings and Zillharts are based on Defendants' action on this road.  Thus, the question central to these claims is whether the Easement was terminated at the time Defendants bladed and cleared the road.

Plaintiffs' entire argument is that the Easement was terminated by the doctrine of merger. Plaintiffs refer to Christina Wieland taking the property back as a result of a default under the real estate contract.  Under New Mexico law, the doctrine of merger requires that as a general rule, "parties to a real property transaction must look solely to the instrument that conveyed the property rights in order to determine their rights and responsibilities."  Home and Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C., 133 N.M. 733 at 737 (N.M.App., 2003).[8]

In this case, the only instrument conveying property rights is Wieland's sale of what became the Box S Subdivision to Sanchez, and which is memorialized in the Real Estate Contract. Ex. A to Wieland Aff. (Doc. 33).  The first page of the instrument indicates that Wieland reserved an easement on this property.  There is no evidence that Wieland ever took back any of the

_____

[8]  Plaintiffs do not cite to any New Mexico cases on merger, instead citing to Washington and Colorado state law without any explanation for doing so.

property she sold to Sanchez.  Thus, there is no merit to Plaintiffs' "doctrine of merger" argument.

Plaintiffs have submitted several exhibits which I find have no purpose in addressing the validity of that portion of the Easement which runs through Plaintiffs' lots.  For example, Plaintiffs present a declaration of an individual who was asked to develop a cost estimate for the road that was supposed to be built to run through Lot 20.  Pltffs' Ex. 2.  Another exhibit is a declaration by Paul Davis, trustee of the Paul Davis Survivor's Trust and the JoAnn V. Davis Residual Trust, which owns land in McKinley County.  Mr. Davis describes a dirt road which starts out at State Highway 53 and continues through his land, into Indian allotment land and private land owned by the Trust and other individuals who were sold land from the Trust, and which then runs into the Box S Subdivision.  Mr. Davis states that he never granted a public easement "from Highway 53 to the first cattleguard."  Pltffs' Ex. 1 (Davis Decl.)

Mr. Davis' statements may be accurate representations of his own intentions and actions, but they have no effect on Wieland's reservation of the easement on her property when she sold her property to Sanchez. Thus, none of this evidence is either material or relevant to Plaintiffs' claims against the Mannings and Zillharts.

On the other hand, New Mexico property law does support Defendants' position that Eberly had at least legal notice of the Easement running through his lots.   Eberly saw the Plat in showing 40-foot Driveway Easement running through the Lot when he first purchased it, but never consulted an attorney to make inquiries about the Easement.  R. Eberly Dep. at 95:13-16. Under New Mexico law, Eberly should have assumed that the Plat accurately pinpointed the exact location of the easement at the time of purchase.  See, Germany v. Murdock, 99 N.M. 679

14

(1983):

> Where circumstances are such that a reasonably prudent person should make inquiries, the
> law charges a person with notice of facts which inquiry would have disclosed. . . The
> acknowledgment of the easement in prior deeds and on the recorded plat and contract,
> constitute sufficient circumstances to charge defendants with notice and a duty to make
> inquiries.

99 N.M. at 681.

Even viewing the evidence favorably to Plaintiffs, the Eberlys were not in the dark about

the existence of an easement running through their property which provided access to the north

lots.  Plaintiffs were counting on the road being finished and the easement problem would go

away – but the road was never finished.  R. Eberly Dep. at 141-42; at 154:11-13.   Eberly

admitted that he took a calculated risk that the road would be built and the easement issue would

be resolved.  As mentioned above, by his own testimony, Eberly expected that the old road would

not be used, but only after the new road had been constructed.  Thus, the Subdivision Plat

afforded Plaintiffs' adequate notice that a valid easement existed, notwithstanding Plaintiffs' half-

baked assertions that the survey is inaccurate.  See, NMSA 1978 § 47-1-46 ("The plat is

considered a sufficient depiction of the Easement for purposes of lawsuit. . .  and such instrument

containing such description or descriptions by reference shall be legally sufficient for all purposes

to the same extent as if the description or descriptions referred to therein had been fully set forth

therein. . . .").

## III.   Claims Against Defendants Mannings and Zillharts

Plaintiffs' claims against Defendants are necessarily premised on a finding that a valid

Easement does not exist.  Because the court has found that the Easement which was reserved by

Christina Wieland did not terminate and is therefore still valid, these claims fail.

A.   <u>Trespass</u>

Plaintiffs' claims of trespass against Defendants lack substance, even without an easement dispute.  The Eberlys do not live on their Subdivision property, but visit it from time to time.  R. Eberly Dep. at 23:20; at 51:15-20).  Richard Eberly insists that Defendants trespassed on his property, even though these allegations are more conclusory than factually based.  R. Eberly Dep.. at 76.  (". . . all I can say is, they trespassed on my property").  Richard Eberly claims that Petranto called him to tell him Defendants were trespassing on Eberly's property.  Petranto told Eberly that Magella Manning was driving around in an all-terrain vehicle.  However, Eberly did not remember Petranto telling him specifically that either Carl Manning, Martha Zillhart or Lee Zillhart were trespassing.

Plaintiffs never actually saw any of the Defendants trespassing on their property.  In fact, Eberly stated that he never saw the Zillharts or Carl Manning on the Subdivision until a state court hearing in July 2002.  R. Eberly Dep. at 52-53.  The tenuousness (and absurdity) of the trespass claim is demonstrated by Plaintiffs' belief that Defendants were trespassing whether or not they stayed within the area marked on the Plat as the 40-foot Driveway Easement.  R. Eberly Dep. at 93:21-25; 75-56:23-25, 1-3; P. Eberly Dep. at 17:16-20).

A trespass consists of an unauthorized entry upon the land of another.  <u>North v. Public Serv. Co. of New Mexico</u>, 94 N. M. 246, 247, <u>cert. denied</u>, 94 N. M. 629, 614 (1980); <u>see</u> Restatement (Second) of Torts, § 158 (1965) (liability for trespass where one intentionally enters land in the possession of another).  In this case, the existing road, which has been established is in the same location as the original dirt road, did not belong to Plaintiffs.  The existence of a valid Easement allowed Defendants the use of that road for access to Lots 19 and 20.  <u>See</u> Restatement

(Second) of Torts, § 188 (1965) (easement allows privilege of entering land at reasonable times and in reasonable manner for purpose of enjoying easement).  For these reasons, Defendants are entitled to summary judgment on the trespass claims.

B.       Conversion

Plaintiffs assert that Defendants bladed the road and in the process tore up fruit trees; and that they filled in the dirt flood dike which Eberly had built.  These actions form the basis for Plaintiffs' claims of conversion.

As with Plaintiffs' allegations of trespass, Plaintiffs never observed Defendants blading the road.  Again, like the trespass claims; Plaintiffs were notified by Petranto of Defendants' actions. R. Eberly Dep. at 25:19-20;108:2-3. The fruit trees at issue were those which Eberly alleges he planted in the middle of the road in 1994, and which he noticed missing soon after Defendants bladed the road.  R. Eberly Dep. at 30-31.  Eberly stated that he could not be sure that the trees, which he described as the size of a pencil were not eaten by deer or elk, although he thought that this would be unlikely given that he had observed that the trees were still alive two months prior to the time Defendants bladed the road.  R. Eberly Dep. at 32, 114:5-7; 115-17.[9]

Plaintiffs' claims of conversion do not stand up to the undisputed facts, even when viewing those facts favorably to Plaintiffs. Under the Restatement (Second) of Torts § 201 (1965):

_____

        [9]  Elsewhere in his deposition, Eberly stated that the trees were twelve to eighteen inches high at the time Defendants destroyed them.  R. Eberly Dep. at 114:15-20.  Patricia Eberly testified that the trees were eighteen inches tall and the circumference of a quarter.  P. Eberly Dep. at 21:9-11.  At any rate, there is no testimony or other evidence that what is at issue here are several very small plants.  Eberly paid $50.00 for the six apple trees.  The three walnut trees, which Plaintiffs also claim were destroyed by Defendants, were free with the purchase of the apple trees.  R. Eberly Dep. at 30:3-10.

> **(1) An entry on land in the possession of another by a possessor of neighboring land is privileged if the entry is made**
>> **(a) for the purpose of abating a structure or other condition on the land,** which constitutes a private nuisance to the actor's possessory interest in the other land, and
>>
>> (b) at a reasonable time and in a reasonable manner, and
>>
>> **(c) after the possessor upon demand has failed to abate the nuisance, or without such demand if the actor reasonably believes it to be impractical or useless.**
>
> (2) The privilege stated in Subsection (1) is also available to owners of easements and of non-possessory estates in land which are detrimentally affected by the nuisance.

(emphasis added).  Because the blading and clearing took place on an Easement and not on Plaintiffs' property, Defendants were not trespassing.  Further, as discussed previously, Defendants were privileged to use the Easement for access to their north lots, and were privileged to blade the road and clear the flood dike in order to clear the road which was the only means of access to the north lots.

Richard Eberly admitted that he built the 25- foot wide flood control dike, as well as the house pad for his retirement home, at a time when he already knew there was a dispute concerning the easement.  R. Eberly Dep. at 57.  Plaintiffs filed this lawsuit soon after Defendants cleared the dike.

From Eberly's own testimony it is clear that if the flood dike could be considered a private nuisance, it would have been useless to ask Eberly to abate the nuisance (i.e., fill in the stock tank) in order to allow Defendants access to their lots over the road.   Eberly insisted that Defendants should have called him when they noticed the dike, so that he could have explained that he put in the dike to protect the integrity of the creek.  Eberly knew that Defendants would have to go beyond the area of the Easement in order to get around the dike.  Yet, he admitted in his deposition that if Defendants had called him, he would have told them to drive around the dike

18

but also would have told them that they would be trespassing by doing so.  R. Eberly Dep. at 83-85.  Eberly had no intention of giving them permission to ride onto his property in order to get around the dike he had built (on a disputed easement).  In fact, Eberly's actions and intentions could be characterized as an attempt to put Defendants in a "catch-22" situation, forcing Defendants to trespass in order to gain access to their property.  Eberly felt that he did not need to call Defendants to notify them that he was building the dike because he "was not the one who is trespassing. . . ."  R. Eberly Dep. at 84:25.

For their claims of conversion against Defendants, Plaintiffs present no material facts which require resolution by a fact finder, and Defendants are entitled to summary judgment on these claims.

C.   <u>Prima Facie Tort</u>

In addition to claims of trespass and conversion, Plaintiffs assert claims of prima facie tort against the Defendants.  Specifically, they accuse Defendants of going out of their way to destroy Plaintiffs' property when they bladed the road (destroying fruit trees while doing so) and filled in the dirt dike.  R. Eberly Dep. at 84:7-8.

The elements of prima facie tort are: 1) an intentional, lawful act by defendant; 2) an intent to injure the plaintiff; 3) injury to the plaintiff and 4) the absence of justification or insufficient justification for the defendant's acts.  <u>Hill v. Cray Research, Inc</u>., 864 F.Supp. 1070, 1078 (D.N.M. 1991) (citing <u>Schmitz v. Smentowski</u>, 109 N.M. 386 (1990)).  In this case, there are no facts at all which would suggest such intent on Defendants' part.  Instead, the undisputed facts, and Eberly's own testimony, better supports the view that Richard Eberly went out of *his* way to force the alleged trespass by Defendants.

19

Instead of resolving the Easement issue by attempting to vacate the portion of the Easement running through his land, Eberly decided to resolve the Easement issue in his own way. which involved building a dirt dike across the Easement.  Eberly never though of notifying Defendants of his intention to build the dike, even though he knew full well that it would prevent Defendants from being able to get to their lots without traveling beyond the Easement boundaries.

Given the facts as described by Plaintiffs, there is no indication at all that any of Defendants' actions were intended to cause harm to the Eberlys.  Therefore, summary judgment will be awarded to Defendants on Plaintiffs' claims of prima facie tort.

D.     Damages

Defendants also argue in their motion that Plaintiffs have not suffered any damages.  As noted earlier, federal jurisdiction was premised on diversity.  The Court has already determined that the entire value of Plaintiffs' property, including "improvements," was less than the required jurisdictional amount for diversity cases.  Doc. 18 at 9-10.  The Court found that Plaintiffs met the amount in controversy primarily because Plaintiffs requested damages for emotional distress, but also suggested that it "*extremely* unlikely they will recover that amount for emotional distress, based on the kinds of injuries they assert."  Doc. 18 at 11.

Plaintiffs claim that an easement running through his property devalues the land.  R. Eberly Dep. at 163:7-10.  However, Eberly stated that he knows what the purchase price was, but has no knowledge of the worth of the lots presently.  Dep. at 55: 16-25.  Without any evidence of a reduction of the property value, a claim for emotional distress based on a loss in property value would be purely speculative.

Plaintiffs also assert that the easement issue has interfered with their retirement plans.  R.

20

Eberly Dep. at 103:12; at 56:4-9.   Eberly stated that his intention was to build a home on the other side of the hill from his cabin in order to enjoy the view of the meadow without a road.  R. Eberly Dep. at 56:10-13.  Yet he does not dispute that there is still room on the lot to build such a home.  Resp. to SMF 47.  Further, Eberly stated that he is not bothered when people use the Easement while he's at the cabin – what bothers him is what is going to happen in the future.  R. Eberly Dep. at 190:3-16.

The Court still finds it highly unlikely that Plaintiffs would be awarded damages for emotional distress.  However, having determined that there is no merit to any of Plaintiffs' claims against Defendants, the Court need not decide whether Defendants are correct in arguing that Plaintiffs have suffered no damages.

### Conclusion

While it is obvious that Plaintiffs are not pleased with the fact that an Easement runs through their property, they present no material facts which challenge the validity of the Easement.  Plaintiffs have not presented any probative evidence to indicate that the easement that was reserved by Christina Wieland was ever terminated.   See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249- 50 (1986) (summary judgment material viewed in light most favorable to nonmovant, but that material must contain significantly probative evidence that would allow a trier of fact to find in nonmovant's favor).  Defendants' actions did not take place on Plaintiffs' private property.  These actions took place on the road or path which has been reserved as an Easement allowing access to Defendants' north lots, and is depicted as such on the Subdivision Plat. Therefore, Plaintiffs' claims of trespass, conversion and prima facie tort against Defendants Carl Manning and the Zillharts fail and summary judgment is awarded to these Defendants.

21

**THEREFORE,**

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendants Carl

Manning, Martha Zillhart and Lee Zillhart (**Doc. 47**) is hereby GRANTED for reasons described

above;

**IT IS FURTHER ORDERED** that all of Plaintiffs' claims against Defendants Carl

Manning, Lee Zillhart and Martha Zillhart are hereby DISMISSED WITH PREJUDICE.

_____

UNITED STATES DISTRICT JUDGE

22