**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RICHARD EBERLY and
PATRICIA EBERLY,

      Plaintiffs,

vs.                                                                                                                  Civil No. 04-0977 WJ/RLP

CARL MANNING, LEE Zillhart,
MARTHA Zillhart, MAGELLA MANNING,
CHRISTINA A. WIELAND, ZUNI MOUNTAIN, LTD,
a New Mexico Limited Partnership, and
LORENZO SANCHEZ,

      Defendants.

**MEMORANDUM OPINION AND ORDER ON MOTIONS
FOR SANCTIONS AND ATTORNEY'S FEES**

THIS MATTER comes before the Court upon a Motion for Rule 11 Sanctions, filed by Defendants Carl Manning and Martha and Lee Zillhart, filed April 4, 2006 (**Doc. 61**) and a Motion for Attorney Fees under 28 U.S.C. § 1927, filed April 4, 2006 (**Doc. 62**). Having considered the parties' briefs and the applicable law and after hearing oral argument, I find that Defendants' motion for Rule 11 sanctions shall be denied, but that Defendants' motion for sanctions under § 1927 shall be granted in part.

**Background**

This hotly contested case is driven by a dispute over the validity of an easement that runs through Plaintiffs' land, and affords Defendants access to their neighboring lots. Plaintiffs and Defendants own neighboring property. In this case Plaintiffs argued that Defendants were trying to drive them off their land, and Defendants argued that Plaintiffs were trying to cut off access to

their homes by blocking a driveway easement which runs through the land. The complaint asserts the common law tort claims of trespass, conversion and prima facie tort relating to damage done to Plaintiffs' property.

On March 21, 2006, the Court granted a motion for summary judgment filed by Defendants Carl Manning and the Zillharts (Lee and Martha) as to all of Plaintiff claims. Doc. 58. Shortly thereafter, the Court granted the parties' unopposed motion to dismiss Defendants Zuni and Lorenzo Sanchez without prejudice. Doc. 74.

## Discussion

Defendants request relief in the form of attorney fees, under both Rule 11 and 28 U.S.C. § 1927. Separate consideration of the legal bases set forth in Rule 11 and 28 U.S.C. § 1927 is necessary. See, Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96-97 (2nd Cir. 1997) ("In a situation where sanctions are imposed under multiple provisions, "separate consideration of the available sanctions machinery is not only warranted, but necessary for meaningful review").

**I.      Motion for Rule 11 Sanctions**

Rule 11 of the Federal Rules of Civil Procedure requires an attorney or unrepresented party in a civil case to certify that any paper he or she submits to the court is not presented for any improper purpose; contains claims that are either warranted by existing law or by an argument for a change in the law; and makes factual allegations that have or are likely to have evidentiary support. Fed.R.Civ.P. 11(b). It permits the court, subject to certain conditions, to sanction violators. Fed.R.Civ.P. 11(c). Trierweiler v. Croxton and Trench Holding Corp. 90 F.3d 1523, 1540 (10th Cir. 1996).

Defendants contend that Plaintiffs filed this lawsuit without proper investigation of the

facts or the law, and that litigation was pursued in order to impose an undue burden of expense on Defendants. The Court could address this type of conduct in the context of either Rule 11 or under 28 U.S.C. § 1927. However, a request for sanctions brought under Rule 11 is bound by certain strictures and procedural requirements, such as the "safe harbor" provision in Rule 11(c)(1)(A) which is intended to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention.

For example, there is some confusion regarding whether a Rule 11 motion may be filed after the sanctionable pleading -- in this case, the complaint -- is dismissed. See, Hutchinson v. Pfeil, 208 F.3d 1180, 1183-84 (10th Cir. 2000) (where Rule 11 motion was filed subsequent to summary judgment, "long after disposition of the interlocutory disputes cited as sanctionable conduct, "reliance on Rule 11 was untimely and in violation of the rule's twenty-one day "safe harbor" provision); see also Barber v. Miller, 146 F.3d 707, 710 (9th Cir.1998) (reversing Rule 11 sanction imposed on motion filed after dismissal of sanctionable pleading), but see, Tropf v. Fidelity nat. Title Ins. Co., 289 F.3d 929, 939 (6th Cir. 2002) and Forcucci v. U.S. Fidelity and Guar. Co., 153 F.R.D. 484 (D.Mass.,1994) (noting that caselaw reveals that courts are split on this question). Also, misconduct under Rule 11 must be judged as of the time the paper was signed, whereas § 1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics. Ted Lapidus, S.A. v. Vann 112 F.3d 91, 96-97, (2nd Cir. 1997). The Court could entertain the notion of Rule 11 sanctions against Plaintiffs or Plaintiffs' counsel sua sponte. See, Barber, 146 F.3d at 711. However, when acting on its own initiative, the Court may not order payment of a monetary penalty to an opposing party -- which is the very relief sought by Defendants. See, Hutchinson, 208 F.3d at 1183-84; Nuwesra v. Merrill

Lynch, Fenner & Smith, Inc., 174 F.3d 87, 94 (2d Cir. 1999) (where sanctions are imposed under Rule 11(c)(1)(B) by the district judge on his own initiative, Rule 11(c)(2) provides that payment of sanctions may be directed only to the court as a penalty).

Thus, because Rule 11's strictures may provide only a thin basis for the imposition of sanctions, the Court prefers to consider Defendants' request under the broader-based 28 U.S.C. § 1927.

## II.     Motions for Sanctions under 28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct."  Sanctions under § 1927 are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the  court."  Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.1987).

The Court disagrees that sanctions are warranted based on what Defendants consider to be Plaintiffs' unfounded assertion of federal jurisdiction.  Whether this lawsuit met the requirements for federal diversity jurisdiction was the subject of a previous Memorandum Opinion and Order entered by the Court, see Doc. 18.  The Court recognized that, based solely on the value of asserted damages carried out by Defendants on Plaintiffs' property, Plaintiffs could not recover the jurisdictional amount if they prevailed.  Doc. 18 at 9.  However, Plaintiffs also asserted claims of emotional distress, based on the adverse effect Defendants' conduct had on their retirement plans, which included building a house on the affected lots.  Given the legal standard the Court was required to follow, the Court ruled in Plaintiffs' favor, since there was not

4

a legal certainty that Plaintiffs' claims were for less than the jurisdictional amount.[1]  The Court did find it extremely unlikely that Plaintiffs would recover over the jurisdictional amount for emotional distress, based on the types of injuries asserted, but nevertheless deferred to the "strong presumption" for plaintiffs where such questions arise, and ultimately determined that this Court had subject matter jurisdiction over the case.  Doc. 18 at 11.  A "close call" on jurisdiction is not sanctionable conduct.

On the other hand, the Court finds that sanctions are nevertheless warranted in this case. Some of the Court's findings on this issue are based on findings made in the Court's Memorandum Opinion and Order granting summary judgment to Defendants Carl Manning, Martha Zillhart and Lee Zillhart (Doc. 58).  However, the Court will avoid needless repetition of certain details related to those findings.

A.     Easement Dispute as Contingent Issue in Case

Defendants contend that the only reason Plaintiffs' counsel, William Stripp, Esq., filed this case in federal court is because counsel is in the process of losing a related state court case.  In that case, filed in 2002 in the eleventh Judicial District for McKinley County, counsel represented Paul Petranto ("Petranto"), who also owned property in the same subdivision as Plaintiffs. Petranto had argued that the subdivision had ceased to exist when Ms. Wieland purchased property back from Lorenzo Sanchez. (see, Doc. 91, Court's Mem. Op. & Order denying Plaintiffs' Motion to Alter or Amend Judgment, at 2). Thus, the argument went, there was

---

[1] The legal certainty standard is very strict.  Generally, dismissal under that standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction.  Woodmen of World Life Ins. Society v. Manganaro, 342 F.3d 1213, 1216-17 (10th Cir. 2003), see Doc. 18 at 7.

nothing left for the county to vacate.  The state court dismissed Petranto's suit, based on Petranto's failure to exhaust administrative remedies by asking the County to vacate the subdivision plat.   Petranto dismissed the appeal before the court of appeals could hear the matter, which had been assigned to the General Calendar. <u>See</u> Pltffs' Ex. 3.2.  Petranto lost again in July 2003 when the Board of McKinley County Commissioners denied his request to vacate the 40-foot driveway easement which was depicted in the subdivision plat.   Richard Eberly testified for Petranto at that hearing.

    Notwithstanding Plaintiffs' claims of trespass and conversion, this case hangs on the existence of an easement of which Plaintiffs had notice when they bought the property, but hoped would no longer be used once a dedicated road was built.  <u>See</u>, Doc. 58 at 15.   Plaintiffs' counsel states that prior to filing the federal lawsuit, he interviewed several individuals, reviewed past and ongoing cases to determine a proper cause of action, and inspected the property in the subdivision.   Yet it is difficult, if not impossible to ignore Defendants' contention that this case should have remained a state court *in rem* action.

    As part of his good faith basis for bringing this action, Mr. Stripp states that he was informed that the 30-foot wide road bladed by Defendants was not in the same location as the 40-foot wide easement that appears on the subdivision plat map; that certain of the Defendants were driving 4-wheelers off the road that they had bladed (allegedly through Mr. Eberly's property); that Carl Manning and Martha Zillhart were furious about the sale of the subdivision lots by their mother, Christina Wieland, to Plaintiffs; and that the Mannings and Zillharts had assaulted a registered nurse who had been driving along the road that Carl Manning had bladed through the Eberlys' property.  All of this information came from Petranto, and the registered nurse was

6

Petranto's girlfriend. Mr. Stripp also obtained information dealing with allegedly inadequate road infrastructure (which was not a claim alleged in this lawsuit), and discovered that Defendant Lorenzo Sanchez had experienced problems obtaining deeds from Ms. Wieland on the property he had purchased from her (which also has no relevance to Plaintiffs' claims against Ms. Wieland in this action).

Despite his pre-lawsuit investigation, Mr. Stripp seems to have ignored evidence which repudiated his claims even at their inception. Defendants inform the Court that for one of the state court hearings, an affidavit was prepared by Robert Stephenson, the lawyer and surveyor who prepared the subdivision plat. The affidavit was submitted on behalf of Defendants and states that the 40-foot easement portrayed on the plat represents the existing road. Defts' Ex. A.[2] Since Mr. Stripp represented the plaintiff (Petranto) in the state court proceedings, he would have been aware of this affidavit.

Plaintiffs' counsel was also aware that Petranto had hired a surveyor who, according to Petranto's testimony, determined that the road bladed by Defendants was in a different location than the driveway easement as it appeared on the plat map. However, the surveyor, who was deposed for the state court case, actually stated that Petranto had never told him about the existing road, and so was unaware that Defendants graded a road that was already there. The surveyor stated that his depiction of the 40-foot driveway easement was simply an approximate location for the easement, since there were no dimensions on the plat for the physical location of the easement. The surveyor further stated that "If I had information stating that that was how the easement was created [from the existing road], then I would most likely use the existing road as

---

[2] Mr. Stephenson is now deceased.

the location for the easement." Defts' Ex. C, at 9-10.  Plaintiffs' counsel was aware of this testimony at the time he filed the lawsuit.

     Ms. Wieland was dismissed early on in the case  (Doc. 38, granting motion to dismiss on basis of insufficiency of process).   I agree with Defendants that it was unreasonable to assert any of the claims alleged in the complaint against Ms. Wieland, since it was undisputed that Ms. Wieland had not entered the subdivision property since 2001.   Plaintiffs must have realized the tenuousness of their claims against Ms. Wieland as well, since (although this is disputed by Plaintiffs), Defendant Sanchez stated that Plaintiffs were suing him to get to Ms. Wieland, hoping that Mr. Sanchez would file a cross-claim against her based on previous problems he had over obtaining deeds to his property.  See Ex. 4 to Doc. 47.   Ms. Wieland's real involvement was limited to the reservation of the easement which is the real subject of this lawsuit.  Since Martha Zillhart and Carl Manning are siblings, and children of Ms. Wieland, Defendants' contentions that Plaintiffs' claims against Ms. Wieland were asserted to harass and pressure those Defendants is not an unlikely scenario, in light of all the circumstances.

     Thus, for all of counsel's assertions that he conducted a proper investigation of the facts and the law, and that Plaintiffs' claims have merit: it was obvious to the Court when it granted partial summary judgment to the Mannings and Zillharts, and it is obvious still, that the only issue in this case has always been the existence of an easement which Plaintiffs knew about from the time they first bought their property in 1993. All of Plaintiffs' claims are contingent on the validity of the easement.   If the 40-foot easement is valid, Defendants could not be trespassing by blading the road to a 30-foot width or by removing an obstacle -- such as a flood dike or small plants-- placed there by Richard Eberly.  Eberly's rationale for placing the dike in the existing

road was his admittedly unresolved water rights (see, Eberly Aff. ¶ 18). Thus, until the easement issue is decided (or the water rights issue, as a prelude to Eberly's right to place a flood dike on an easement), Plaintiffs' other claims are premature.[3]

Instead of waiting for a final resolution in Petranto's state court case, the Eberlys added state tort claims and claims for emotional distress damages in order to bring an action against the same Defendants in federal court – claims which hinged on the resolution of what is best described as an *in rem* action clearly within the general jurisdiction of, and properly addressed by the state court. None of the Plaintiffs ever actually saw any of the Defendants trespassing on their property. Doc. 58 at 16. Without a decision on the easement favorable to Plaintiffs, none of the other claims would have either legal or factual support. The high degree of contentiousness among the parties could easily lead to the conclusion that the federal lawsuit was filed with an objective to harass Defendants.[4]

B.      Multiplication of Proceedings

In addition to filing this action in federal court in order to burden Defendants with having to spend money to defend a lawsuit, Plaintiffs' litigation of the action was perpetuated by their tendency to shift legal positions in order to withstand Defendants' motions to dismiss, making it even more difficult and expensive for Defendants to continue defending the case. For instance, in

---

[3] Because the Court was required to view the facts favorably to Plaintiffs, the Court could not determine the prematurity and inappropriateness of Plaintiffs' non-easement claims until a ruling was made on summary judgment on those claims.

[4] Richard Eberly was aware that the McKinley County Board of Commissioners had upheld the validity of the easement, yet insisted that Defendants were not entitled to cross his property to access theirs. Eberly stated in his affidavit that "I believed that if I obtained a monetary judgment against [Defendants] for trespassing on and damaging my property, then they would stop doing it." Eberly Aff., ¶ 19.

their motion to dismiss, Defendants argued that this Court lacked subject matter jurisdiction because Plaintiffs failed to administratively exhaust the easement issue (Doc. 5). In response, Plaintiffs shifted their position to contend that Defendants had trespassed outside the location of the driveway easement. This turned out to be an untenable legal position, given the undisputed facts. Likewise, instead of responding on the merits to Defendants' summary judgment motion, Plaintiffs requested a dismissal of their claims without prejudice, because they determined that the costs of proceeding with the litigation would exceed the value of the property at issue. See, Doc. 49.[5] Plaintiffs also noted litigation was not worth continuing because they would not be able to collect any damages (assuming they prevailed) from Defendant Sanchez, who already had a judgment filed against him for over $1 million dollars.

There is no reason why Plaintiffs' counsel, having conducted adequate investigation, could not have discovered the outstanding judgment against Sanchez prior to filing the lawsuit. Also, Plaintiffs knew the value of the property before going into this lawsuit. There is no reason why they would not have known before filing the lawsuit that the cost of litigation would exceed the value of that property. Meanwhile, Defendants were forced to incur legal expenses which increased as the case proceeded.

Plaintiffs' shifting of legal stances also led to factual inconsistencies and sham disputes as noted by the Court in its Memorandum Opinion and Order on Defendants' summary judgment motion (Doc. 58). For example, Plaintiffs made much of Defendants' widening of a 10-foot dirt road to 30 feet, where Plaintiffs did not dispute – and could not dispute – that this same road was

---

[5] The Court subsequently entered an Order requiring Plaintiffs to either respond to the summary judgment motion on the merits or have their claims dismissed on the merits. Doc. 52. Plaintiffs responded on the merits and lost on the merits.

portrayed as the 40-foot easement on the subdivision plat. Plaintiffs did not dispute that the dirt road bladed by Carl Manning was the only existing road in the subdivision. Thus, Plaintiffs could not support their allegation, fashioned in response to Defendants' motion to dismiss, that Defendants had trespassed outside the bounds of the driveway easement. See, Doc. 58 at 8.

Plaintiffs persevered against Defendants' attempts to dismiss their claims by presenting absurd arguments, for example: contending that Defendants were trespassing whether or not they stayed within the easement area marked on the subdivision plat (Doc. 58 at 16) and vacillating on whether Plaintiffs would be disputing the existence of the 40-foot easement in this lawsuit (Doc. 58 at 11). The Court also made a finding that Richard Eberly's conduct, not any of the Defendants, forced or set up conditions for the alleged trespass by hindering Defendants' ability to access their lots.

Based on the foregoing discussion, I find that Plaintiffs' filing of this lawsuit was carried out to harass Defendants, and that Plaintiffs' various positions taken were without legal or factual basis, and unnecessarily prolonged the life of this case. Further, I take a dim view of parties and their counsel who embellish a new complaint in federal court with matters that rely on the resolution of existing state court litigation, in an attempt to circumvent the prospect of losing in state court. Therefore, sanctions in the form of the requested attorney fees are warranted. The Court must next determine the amount of the sanction.

### III. Amount of Attorney Fee Award

Mr. Luke Macik represented Defendants Wieland, Carl Manning and the Zillharts. He requests a total of $32,457.50 in attorney fees representing these Defendants against Plaintiffs' claims. Counsel has expended 235.2 hours (a total of $29,395) defending this lawsuit alleged

against Carl Manning and the Zillharts, but only 24.5 hours ($3,062.50) for Ms. Wieland.

The starting point for determining the amount of a reasonable fee is to calculate the number of hours reasonably expended on the litigation and to multiply that number by a reasonable hourly rate. Ramos v. Lamm, 713 F.3d 546, 552 (10th Cir. 1983) overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987). The resulting figure is referred to as the "lodestar" amount. Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1988). The Court may accept the lodestar proposed by a plaintiff as the reasonable amount to award or it may adjust the lodestar upward or downward, depending on the circumstances of the case. See Ramos, 713 F.2d at 552-55. In reducing the lodestar, the Court may elect to discount requested fees by specific billing entries or hours or by making a general reduction of hours "to achieve what the court determines to be a reasonable number." Case, 157 F.3d at 1250 (internal citation omitted); Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).

In setting a reasonable hourly rate, the court looks to "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Case, 157 F.3d at 1256; see also Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984) (reasonable hourly rate comports with rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation"). In setting a reasonable hourly rate, the Court should look to the local area. Rates, both higher and lower, that are billed in other parts of the country may be considered but are not controlling as different economic factors and costs of living invalidate direct comparisons.

I have reviewed Mr. Macik's affidavit and carefully itemized time sheets. I find Mr.

Macik's hourly rate of $125.00 to be reasonable for the area in which Mr. Macik practices.

Of the approximately 260 hours spent on this case, approximately 25 hours were spent in telephone conferences; 25 hours were spent in drafting dispositive motions; and 20 hours in legal research.  The remainder of hours was spent largely reviewing pleading drafts and correspondence from opposing counsel, drafting correspondence, preparing for depositions, hearings and mediations.  There is nothing to suggest that the issues in this case were of such a degree of complexity that handling this litigation resulted in preclusion of Mr. Macik's time for other matters.  Although not a critical factor in an attorney fee analysis, I note that the total amount of fees for work done by Plaintiffs' counsel in this case is represented to be $11,253.61.

While not deciding exactly how many hours should have been spent in each of these categories, I find that, based on the nature of the issues involved in this case, a number somewhat under these amounts would be considered more reasonable.  See Case, 157 F.3d at 1250 (where district court's reduction of the claimed fees was general in nature, district court was not required to identify and justify each disallowed hour, and there is no requirement that district courts announce what hours are permitted for each legal task).  The Court finds that a reasonable lodestar amount of hours for the total time expended on litigating this case is 120 hours ($15,000), and represents an appropriate sanction against Plaintiffs' counsel under 28 U.S.C. § 1927.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Rule 11 Sanctions, filed by Defendants Carl Manning and Martha and Lee Zillhart  **(Doc. 61)** is DENIED for reasons described above;

**IT IS FURTHER ORDERED** that the Motion for Attorney Fees under 28 U.S.C. § 1927 filed by Defendants Carl Manning, Christina Wieland and Martha and Lee Zillhart **(Doc. 62)** is hereby GRANTED IN PART in that Plaintiff's counsel is imposed a sanction under 28 U.S.C. § 1927 in the amount of $15,000.

_____
UNITED STATES DISTRICT JUDGE